RICK G. HAWKES, Plaintiff-Appellee, v. CASINO QUEEN, INC., Defendant-Appellant.

Fifth District   No. 5—01—0001

Opinion filed January 29, 2003.

Kenneth M. Burke, of Brown & James, P.C., of Belleville, for appellant.

Robert W. Rongey and Kenneth P. Danzinger, both of Callis, Papa, Jackstadt, Szewczyk, Rongey & Danzinger, P.C., of Granite City, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

A jury rendered a verdict in favor of Rick G. Hawkes (plaintiff) and against Casino Queen, Inc. (defendant), for injuries sustained by plaintiff while using the restroom aboard defendant's casino cruise ship. Defendant now appeals. The issues for review are as follows: (1) whether the circuit court erred in prohibiting defendant from performing a psychiatric examination upon plaintiff, (2) whether the court erred in granting plaintiff's motion *in limine*, which prevented the admission of evidence of plaintiff's prior injuries, (3) whether the circuit court erred in denying defendant's motion for a directed verdict at the close of plaintiff's case, (4) whether the circuit court erred in submitting certain jury instructions, (5) whether the jury's award of damages was against the manifest weight of the evidence, and (6) whether the circuit court erred in denying defendant's motion for a judgment notwithstanding the verdict. We affirm.

## I. BACKGROUND

On November 12, 1994, plaintiff boarded defendant's casino for an afternoon cruise. During his visit plaintiff entered the men's restroom. While in the restroom, plaintiff tripped and fell to the floor, sustaining injuries to his head, neck, and back. Plaintiff was later taken by ambulance to St. John's Mercy Hospital for medical treatment. After being released from the hospital, plaintiff received medical care from Dr. David Schreiber for head, neck, and shoulder pain, as well as for weakness in his arms and inability to grip. Dr. Schreiber eventually referred plaintiff to Dr. George Schoedinger, an orthopedic surgeon. Dr. Schoedinger diagnosed plaintiff as suffering from a ruptured disc at the C5-C6 level and later performed an anterior cervical discectomy

and fusion upon him. Dr. Schoedinger believed that plaintiff's ruptured disc, or the symptoms he experienced that necessitated his surgery, had been caused by his November 12, 1994, fall. Plaintiff also received a submuscular ulnar nerve transposition, performed by Dr. David Haueisen, to cure cubital tunnel syndrome also caused by the fall.

Plaintiff filed a complaint against defendant in the circuit court of Madison County. Plaintiff's complaint, as amended on August 18, 1995, alleged that he was an invitee using the bathroom aboard defendant's casino boat when he was caused to trip and fall by an open cabinet door immediately below one of the bathroom sinks. Plaintiff alleged that defendant had been negligent in (1) opening and leaving open the cabinet door below the bathroom sink, (2) failing to warn him of the open door and the dangerous condition it created, (3) failing to close the door or correct the dangerous condition it presented, (4) failing to ascertain that he was lying in a position of danger while its agents repeatedly attempted to open the bathroom door, or (5) carelessly operating its gaming boat. Plaintiff alleged that these incidents of defendant's negligence proximately caused his fall and resulting injuries. Plaintiff's suit was later transferred to St. Clair County on grounds of *forum non conveniens*. On December 30, 1998, defendant amended its answer to include a third-party complaint against Boatmen's National Bank. Defendant alleged that the bank might be liable in part for plaintiff's damages under the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.* (1994)). The bank had the case removed to federal court, relying on the court's federal question and pendent jurisdiction over the matter. However, the matter was remanded to the circuit court of St. Clair County on May 18, 1999, after the federal district court entered a summary judgment on all the issues forming the basis of its federal question jurisdiction.

In February 2000, while the suit was still pending in federal district court, plaintiff sought psychiatric care from Dr. Edwin Wolfgram. Dr. Wolfgram diagnosed plaintiff as permanently and chronically suffering from major depression, mood disorder secondary to cerebral concussion, and anxiety disorder resulting from his chronic pain. On August 4, 2000, after the matter had been remanded to the circuit court, defendant filed a motion pursuant to Supreme Court Rule 215 (166 Ill. 2d R. 215) to allow a psychiatric examination of plaintiff by Dr. Richard Wetzel. Defendant's motion asserted that its psychiatrist needed to examine plaintiff before he could offer testimony. Defendant further asserted that it would be severely prejudiced if Dr. Wetzel were not able to examine plaintiff, allowing him to form his own opinion on plaintiff's claimed psychiatric or

psychological injuries. On August 28, 2000, defendant's motion was summarily denied by the circuit court.

Shortly before the trial, plaintiff submitted a motion *in limine* in which he sought to bar defendant from mentioning or referring to prior neck injuries and related treatment he received before his fall. Plaintiff's motion, relying upon the Illinois Supreme Court's recent decision in *Voykin v. Estate of DeBoer*, 192 Ill. 2d 49, 733 N.E.2d 1275 (2000), sought to bar defendant from suggesting that plaintiff's injuries were a result of a preexisting condition involving his neck. On October 2, 2000, before the trial began, the court heard arguments from the parties on plaintiff's motion. The court granted plaintiff's motion *in limine* and barred defendant from mentioning plaintiff's prior neck injuries and treatment, as well as any opinions or cross-examination concerning whether plaintiff had a prior bulging disc in his cervical area. Defendant objected to the court's barring of this evidence and submitted, as an offer of proof, the evidence deposition of plaintiff's former chiropractor, Dr. Robert Engelmann, and nearly three full pages of cross-examination from the evidence deposition of plaintiff's orthopedic surgeon, Dr. Schoedinger.

At the close of plaintiff's case, defendant moved for a directed verdict. Defendant argued that plaintiff had failed to make a *prima facie* case. The court denied defendant's motion. On October 5, 2000, the jury returned a verdict in favor of plaintiff in the amount of $1.87 million, which included a $1.25 million award for plaintiff's impaired earning capacity. The jury also found plaintiff 30% contributorily negligent and reduced the award to $1.309 million. On November 2, 2000, defendant filed a motion for a judgment notwithstanding the verdict or, alternatively, for a new trial. On December 13, 2000, the circuit court denied defendant's posttrial motion entirely. Defendant made a timely appeal.

## II. ANALYSIS
### Motions for Directed Verdict and Judgment Notwithstanding the Verdict

Defendant first argues that the circuit court erred in denying both its motion for a directed verdict at the close of plaintiff's case and its later motion for a judgment notwithstanding the verdict, because plaintiff failed to prove, to a reasonable certainty, that his fall had occurred from tripping over an open vanity door. Defendant contends that, though plaintiff alleged that his injuries had resulted from tripping over an open vanity door in defendant's restroom, he failed to actually prove that an act of negligence had proximately caused his injuries. Defendant claims that plaintiff offered no testimony on direct examination explaining how the accident happened and that his own

testimony makes it just as likely that he slipped in soapy water dripping from his hands. We disagree.

■ In a negligence action, the plaintiff is required to prove that the defendant owed him a duty of reasonable care, that the defendant breached its duty, and that the defendant's breach proximately caused the plaintiff's injuries. *Wiegman v. Hitch-Inn Post of Libertyville, Inc.*, 308 Ill. App. 3d 789, 795, 721 N.E.2d 614, 620 (1999). "[L]iability cannot be predicated upon surmise or conjecture as to the cause of an injury, and therefore proximate cause can be established only when there is a reasonable certainty that the defendant's act caused the injury." *Wiegman*, 308 Ill. App. 3d at 795, 721 N.E.2d at 620. However, causation need not be shown by direct evidence and "may be established by facts and circumstances which, in the light of ordinary experience, reasonably suggest that the defendant's negligence operated to produce the injury." *Wiegman*, 308 Ill. App. 3d at 795, 721 N.E.2d at 620.

■ "[I]t is the province of the jury to resolve conflicts in the evidence, to pass upon the credibility of the witnesses, and to decide what weight should be given to the witnesses' testimony." *Maple v. Gustafson*, 151 Ill. 2d 445, 452, 603 N.E.2d 508, 512 (1992). A directed verdict or a judgment notwithstanding the verdict is properly entered only where all the evidence, when viewed in a light most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504, 513-14 (1967); *Grewe v. West Washington County Unit District No. 10*, 303 Ill. App. 3d 299, 303, 707 N.E.2d 739, 742 (1999). In directing or setting aside a verdict, the circuit court cannot reweigh the evidence or assess the credibility of witnesses; instead, it may only consider the evidence and any inferences that may follow, in the light most favorable to the nonmovant. See *Maple*, 151 Ill. 2d at 452-53, 603 N.E.2d at 512; *Grewe*, 303 Ill. App. 3d at 303, 707 N.E.2d at 742. Further, the circuit court cannot ignore circumstantial evidence, including any reasonable inferences of negligence that may be properly drawn. *Grewe*, 303 Ill. App. 3d at 303, 707 N.E.2d at 742. However, circumstantial facts must make the conclusion reached more probable, as opposed to merely possible. *Wrobel v. City of Chicago*, 318 Ill. App. 3d 390, 398, 742 N.E.2d 401, 408 (2000).

In the instant case, four witnesses provided the only testimony concerning the cause of the fall. These witnesses were present before, during, or immediately after plaintiff's fall in the bathroom. The first of these witnesses to testify was Roosevelt Jordan, a porter employed by defendant. Jordan testified that he had been assigned to clean the

bathroom in which plaintiff fell on the day of the incident. He had entered the bathroom and proceeded to the handicapped stall. Before he entered the stall, someone spoke to him, inquiring how he was doing. Jordan passed this person as he left the urinal and headed toward the bathroom's vanity. Jordan testified that as he left the handicapped stall, he saw that another man, who had not been present at the time he entered the stall, was standing at the urinal. Jordan also noticed that a man was lying on the bathroom floor. This man looked like the man who had spoken to him earlier. Jordan then left the bathroom to report the incident to security and contact his supervisor. He then stood by the bathroom door until a security guard told him to go downstairs. Once downstairs, Jordan completed a written report of the incident. Jordan testified that cleaning supplies for porters were kept under the sink in the bathroom's vanity, but he could not recall whether the vanity door was open while he was cleaning in the bathroom that day. Jordan noted, however, that if the vanity door had been open, it would have stuck out far enough so that a man standing at the sink could trip over it as he turned to walk out of the bathroom. Jordan testified that he returned to the bathroom later that evening and saw a maintenance person (Jose) "messing around" with the vanity cabinets and taking pictures. When questioned about the maintenance person's activities, Jordan provided the following testimony:

"Q. Well, what was Jose doing?

A. He was just—he was—already bent down over there. That's all I know, you know, because they said, you know, something about—said the man tripped over the door. That's all I remember, you know."

Next, Patrick York, a security guard employed by defendant at the time of the incident, testified that he was the first to respond to plaintiff's fall in the bathroom. York testified that once he entered the bathroom, he observed plaintiff lying on the floor. York said that plaintiff informed him that he had tripped over an open vanity door. York was required to complete a report on plaintiff's fall. His report indicated that plaintiff had complained that he had tripped over an open cabinet door and suffered head, neck, and back pain. York said that, in accordance with defendant's policy, two to three photographs were taken of the bathroom after plaintiff's fall. York testified that these photographs showed that a vanity door had been ripped off of its hinges.

Next, Craig Loepker, who was in the bathroom at the time plaintiff fell, testified by way of a videotaped evidence deposition that was played before the jury. Loepker testified that upon entering the bathroom, he went to wash his hands and noticed that the vanity door

under the sink was open. After washing his hands, he proceeded toward the urinals, at which time he noticed someone back in the handicapped stall. Someone else entered the bathroom while he was using the urinals. He later heard a loud noise, heard somebody hit the floor, and then saw a man and the vanity door lying on the floor of the bathroom. Loepker noted that the door on the floor was the same vanity door he had seen open under the sink earlier and that the door had been ripped off the vanity. Loepker also noted that the man on the floor appeared to be in a lot of pain and was complaining about his back. Loepker did not observe anything on the bathroom floor that would have caused the man to slip.

Plaintiff testified at the trial that he walked into the bathroom and went to the urinal. As he turned to leave the urinal, he noticed someone (Loepker) enter the bathroom. In walking away from the urinal, he actually passed the person entering the bathroom and proceeded to the vanity. As plaintiff proceeded to the vanity, he noticed an African-American man enter the bathroom. Plaintiff thought that the man was an employee of the casino. Plaintiff said "hi" to the man and then turned back to look in the mirror above the vanity before beginning to wash his hands. As plaintiff was washing his hands, he noticed, peripherally, that the employee was stooping next to him on his left side. The man then came around to his back side and then over to his right side. Plaintiff testified that he engaged in chitchat with the man for a few seconds and finished washing his hands. After plaintiff finished washing his hands, his legs went out from under him, his body corkscrewed, and he landed on his back.

On cross-examination by defendant, plaintiff was asked about the cause of his fall.

"Q. Okay. And isn't it true, Mr. Hawkes, that you've told us before that you may have felt something clip your leg and that occurred during your fall; is that correct?

A. I believe that's what caused my fall, yes, sir.

Q. But did you tell us before you may have felt something clip your leg during the fall?

A. I think I might have mentioned, and I could look at my testimony[—]it's been a long time[—]but I think what I said was that I felt something clip my leg, yes.

Q. During the fall?

A. Yes, on the left leg I believe I said toward the back side, back of the left leg.

Q. And you think you may have felt that during your actual fall when you were in the process of falling?

A. I'd have to review my testimony. I don't know that I can actually say that.

MR. BURKE [defense counsel]: Page 76.

Q. (by Mr. Burke) Page 76. And this is your deposition, correct? [']Deposition of Rick G. Hawkes[']?

A. Yes, uh-huh.

\* \* \*

Q. And the question is, 'Did it clip your leg before you fell or after you fell?' And your answer is, 'I guess during the fall.'

A. Yes, sir.

Q. Does that refresh your recollection?

A. Yes, sir.

Q. And you don't recall anything being on the floor that may have caused you to fall; is that correct?

A. No, sir.

Q. I mean, is what I said—do you recall there being anything on the floor?

A. No, sir. When I came in the bathroom, I didn't notice anything on the floor. When I turned to come to the bassinet [sic] from the urinal, I didn't notice anything on the floor. No, sir.

\* \* \*

Q. Now, in this lawsuit, you're claiming you've tripped over this door; is that correct?

A. I've heard various different statements over the last—

Q. I'm asking what your statement is, sir.

A. My statement would be more like a—clip and slam, if you want my statement.

Q. Okay. The door caught your leg and caused you to trip?

A. Yes, sir."

Further, the redirect examination of plaintiff included the following colloquy:

"Q. Now, Dr. Schreiber testified that you slipped and apparently a porter left open a cabinet door. Is that your version of what happened here, or is there any difference in that?

A. Well—

Q. From what you're saying?

A. I don't—I don't know that I—I know one thing is[,] when I went to that bassinet [sic], there was no door open until the gentleman on my left stooped down, and I don't know at that point if there was a door open because I didn't see it. All I know is something, as I went to step with my left foot, caught the back of my left joint and just twist [sic] my feet out from underneath me and slammed me to the floor. And I didn't know what it was until I asked what the hell happened, and the gentleman told me they left this door open. [']You fell over it,['] or something in that regard. I don't know exactly what was stated. Whatever was stated was stated."

■ Despite defendant's characterization of the evidence, seizing

upon isolated exchanges between certain witnesses and counsel at the trial and in depositions, the record reveals that there was sufficient evidence for the jury to find that defendant's negligence was reasonably certain to have caused plaintiff's fall and subsequent injuries. Here, plaintiff was heard to have loudly fallen to the floor; immediately after he was heard to have fallen, plaintiff was observed to be lying on the floor, along with a vanity door that had been ripped off its hinges; the witnesses testified that there was nothing else on the floor that would have caused plaintiff to fall; after his fall, plaintiff informed defendant's security personnel that he had tripped over an open vanity door; and plaintiff's own testimony provided that he believed that the vanity door was what caused him to fall.

We have examined closely the entire record before us and do not believe that the evidence presented by plaintiff can be viewed as scant or slight. Nor do we believe that the evidence before the jury led it to engage in guesswork in arriving at its verdict. Instead, the evidence presented required the jurors to rely only upon their experience and common sense in finding that the vanity door was reasonably certain to have been the most probable cause of plaintiff's fall and that defendant's actions or omissions in leaving the door open operated as the primary cause of plaintiff's injuries. In considering the evidence presented in a light most favorable to plaintiff, we find that he established that defendant's negligent acts or omissions were reasonably certain to have caused his fall and subsequent injuries. Accordingly, the circuit court properly denied defendant's motion for a directed verdict at the close of plaintiff's case and its later motion seeking a judgment notwithstanding the verdict.

Motion to Have Plaintiff Submit to Psychiatric or<br>Psychological Examination

■ Defendant next argues that the court erred in denying its motion to have plaintiff examined by its own psychiatrist. However, we refuse to address this argument because defendant has not cited to any authority in support of its argument beyond the standard by which we are to review a circuit court's denial of a motion made pursuant to Supreme Court Rule 215. Any issue that has not been sufficiently or properly presented to this court for review is waived. *Pecora v. Szabo*, 109 Ill. App. 3d 824, 826, 441 N.E.2d 360, 361 (1982). A court of review is entitled to have the issues clearly defined with pertinent authority cited. *Southwestern Illinois Development Authority v. Vollman*, 235 Ill. App. 3d 32, 38, 600 N.E.2d 926, 929-30 (1992). The appellate court is not simply a depository into which an appealing party may dump the burden of argument and research. *Pecora*, 109 Ill. App. 3d at 826, 441 N.E.2d at 361.

## Motion *in limine*

Next, defendant argues that the circuit court erred in granting plaintiff's motion *in limine* barring it from mentioning plaintiff's prior neck injuries, the treatment thereof, and all opinions and cross-examination concerning a bulging disc in plaintiff's cervical area. Plaintiff contends that the circuit court's exercise of discretion in excluding the evidence was proper and that defendant has failed to show that his prior injuries and treatment are causally related to his November 12, 1994, fall.

■ "The purpose of the motion [*in limine*] is to promote a trial free of prejudicial material and to avoid highlighting the evidence to the jury through objection." *Konieczny v. Kamin Builders, Inc.*, 304 Ill. App. 3d 131, 136, 709 N.E.2d 695, 699 (1999). The circuit court is vested with broad discretion to grant a motion *in limine* "as part of its inherent power to admit or exclude evidence." *City of Quincy v. Diamond Construction Co.*, 327 Ill. App. 3d 338, 342-43, 762 N.E.2d 710, 714 (2002). Courts of review will not reverse a circuit court's decision to grant a motion *in limine* absent a clear abuse of discretion. *Ficken v. Alton & Southern Ry. Co.*, 291 Ill. App. 3d 635, 642, 685 N.E.2d 1, 7 (1996). Further, this court may affirm the circuit court upon any grounds appearing in the record, without regard to whether such grounds were relied upon by the circuit court or whether its reasoning was correct. *Ficken*, 291 Ill. App. 3d at 642, 685 N.E.2d at 7.

■ In the instant case, both parties rely on *Voykin v. Estate of De-Boer*, 192 Ill. 2d 49, 733 N.E.2d 1275 (2000), as support for their respective arguments. In *Voykin* the Illinois Supreme Court abrogated the "same part of the body rule," which had provided as follows: "[I]f a plaintiff has previously suffered an injury to the same part of the body, then that previous injury is automatically relevant to the present injury simply because it affected the same part of the body." *Voykin*, 192 Ill. 2d at 57, 733 N.E.2d at 1279. Instead, the court instructed that for evidence of a plaintiff's prior injuries to be admissible at the trial, the prior injuries must make the existence of a fact that is of consequence more or less probable. *Voykin*, 192 Ill. 2d at 56-57, 733 N.E.2d at 1279. On the issue of causation, evidence of a plaintiff's prior injuries is relevant only if it tends to negate the cause of the injuries alleged. *Voykin*, 192 Ill. 2d at 57, 733 N.E.2d at 1279. However, "a defendant need not be the *only* cause to be held liable for an injury; rather, it is sufficient that the defendant is *a* cause." (Emphasis in original.) *Voykin*, 192 Ill. 2d at 57, 733 N.E.2d at 1279, citing *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 88, 199 N.E.2d 769, 780 (1964). "Thus, for a prior injury to be relevant to causation, the injury must make it less likely that the defendant's actions caused *any* of the

plaintiff's injuries or an identifiable portion thereof." (Emphasis added.) *Voykin*, 192 Ill. 2d at 58, 733 N.E.2d at 1279-80. However, "if a defendant wishes to introduce evidence that the plaintiff has suffered a prior injury, *** the defendant must introduce expert evidence demonstrating why the prior injury is relevant to causation, damages, or some other issue of consequence." *Voykin*, 192 Ill. 2d at 59, 733 N.E.2d at 1280.

Here, defendant argues that the evidence deposition testimony of plaintiff's chiropractor, Dr. Robert Engelmann, was relevant to show that it was not liable for causing plaintiff's injuries. As support for this argument, defendant relies on the following testimony from Dr. Engelmann's deposition concerning his prior treatment of plaintiff for various neck-related problems:

"Q. Do you have an opinion you can state to a reasonable degree of chiropractic certainty as to whether the misalignment, repeated soft tissue injury, and muscle spasms might or could have caused disc bulging in Mr. Hawkes' neck?

A. It could have."

However, plaintiff's cross-examination revealed that Dr. Engelmann had never diagnosed plaintiff with an actual bulging disc.

"Q. *** [L]et's go back to counsel's questioning that he just left off with. Doctor, you never diagnosed a bulging disc, did you?

A. No.

Q. You never diagnosed a herniated disc, did you?

A. No."

Despite this clear testimony, defendant, on appeal, characterizes Dr. Engelmann's testimony as "relevant to establish that plaintiff suffered from a preexisting condition, *a disc bulge at C5*, for which the defendant is not liable." (Emphasis added.) In light of the fact that Dr. Engelmann never diagnosed plaintiff as having a disc bulge at C5, as the above-quoted portions of his testimony reveal, we find defendant's mischaracterization to be inconsistent, at best. Needless to say, we do not believe that Dr. Engelmann's testimony negates the cause of plaintiff's fall or the resulting injuries. Further, the fact that plaintiff's prior injuries *could have* caused a disc to bulge in his neck does not make it less likely that defendant's actions caused *any* of plaintiff's injury.

Next, defendant focuses upon the portions of Dr. Schoedinger's video evidence deposition barred by the court's ruling.

"Q. As I understand it, you believe the fall at the Casino Queen may have had an impact on Mr. Hawkes' neck problem[,] either causing the bulging disc or by causing symptoms in the disc[;] is that correct?

A. Well, I think that it either caused his disc rupture or caused a previously deranged disc to become symptomatic.

Q. And as I understand it from what you told us before, your basis for that opinion is you rely exclusively on the history you obtained from Mr. Hawkes?

A. That is correct.

Q. Namely, you relied on the fact that he told you he had never had any prior problems with his neck?

A. Yes, and he had a history of an injury when he struck his head.

Q. Okay, and you rely on the fact that he's telling you the truth?

A. Correct.

Q. Okay, and he's in total control of what he tells you and whether its [sic] true or not?

A. That is true.

Q. Therefore his credibility becomes important when you're expressing opinions as to what may have caused something?

A. That is correct.

Q. He never told you he was in a motor vehicle accident in 1992 that required him to seek chiropractic treatment for his neck after that?

A. That is correct.

\* \* \*

Q. Were you aware that the chiropractor diagnosed him or reported him as expressing pain and having symptoms at C5 in 1993?

A. I'm not aware of that.

Q. C5 is where you found the problem, is that correct?

A. C5-6.

Q. Okay. For the purposes at least of the opinions you are expressing, wouldn't you have liked to have known of these facts prior to your testimony?

A. That would have been useful."

■ Defendant argues that a consideration of Dr. Engelmann's testimony and Dr. Schoedinger's testimony together is relevant to show that plaintiff was symptomatic at his C5 vertebra before his fall and that the disc injury for which he received surgery was caused by something other than the fall. We disagree. Neither of these experts' testimony when taken alone demonstrates why the prior injury is relevant under the *Voykin* standard. In fact, the testimony elicited from both of plaintiff's treating doctors amounted to little more than supposition and conjecture. The essential next step of assessing the relationship between the prior injury and the present injury from the testimony of both doctors was left to the jury. This practice is exactly

what the *Voykin* decision guarded against. "In most cases, the connection between the parts of the body and past and current injuries is a subject that is beyond the ken of the average layperson." *Voykin*, 192 Ill. 2d at 59, 733 N.E.2d at 1280. "A prior foot injury could be causally related to a current back injury, yet a prior injury to the same part of the back may not affect a current back injury." *Voykin*, 192 Ill. 2d at 59, 733 N.E.2d at 1280. In order to avoid what amounted to the jury forming medical opinions, the Illinois Supreme Court has instructed that a defendant bears the burden of "introduc[ing] expert evidence demonstrating *why* the prior injury is relevant to causation, damages, or some other issue of consequence." (Emphasis added.) *Voykin*, 192 Ill. 2d at 59, 733 N.E.2d at 1280. Defendant chose not to elicit from its own expert (Dr. Carter, an orthopedic surgeon) any testimony regarding the relevancy of the prior injuries to the present injury. We believe that defendant failed to demonstrate why the prior injury is relevant to the questions at issue in the present case. Accordingly, we find that the circuit court acted properly within its discretion in granting plaintiff's motion *in limine* to exclude such evidence.

## Jury Instructions

■ Defendant next claims that the circuit court erred in submitting two specific jury instructions tendered by plaintiff. First, defendant argues that the circuit court erred in submitting plaintiff's jury instruction number 16 because the instruction was not supported by the evidence. However, we refuse to reach this issue because defendant has again failed to support its argument with citations to authority. Defendant has provided us with only the following supported proposition: "Generally, it is error to give an instruction that is not based on the evidence. See *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 658 N.E.2d 450, 212 Ill. Dec. 969 (Ill. 1995)." Following this precedential insight, defendant merely recites isolated portions of witness testimony. Again, any issue that has not been sufficiently or properly presented to this court for review is waived. *Pecora*, 109 Ill. App. 3d at 826, 441 N.E.2d at 361.

Second, defendant argues that the circuit court erred in submitting plaintiff's tendered instruction based upon Illinois Pattern Jury Instructions, Civil, No. 5.01 (1995) (hereinafter IPI Civil (1995) No. 5.01). Plaintiff's tender of this instruction was founded upon defendant's admitted failure to disclose an incident report completed by Roosevelt Jordan, the porter who was employed by defendant and was present in the bathroom during plaintiff's fall. Plaintiff's instruction stated as follows:

"If a party to this case has failed to offer evidence within his

power to produce, you may infer that the evidence would be adverse to that party if you believe each of the following elements:

1. The evidence was under the control of the party and could have been produced by the exercise of reasonable diligence.

2. The evidence was not equally available to an adverse party.

3. A reasonably prudent person under the same or similar circumstances would have offered the evidence if he believed it to be favorable to him.

4. No reasonable excuse for the failure has been shown."

Defendant argues that the court's submission of this instruction to the jury was an abuse of the court's discretion because (1) plaintiff failed to establish the third element of the instruction and (2) the report presumably would have duplicated another incident report disclosed to plaintiff. We disagree.

■ IPI Civil (1995) No. 5.01 informs the jury that it may infer that certain evidence would have been adverse to a party where that evidence was not produced by the party and was within the party's control. *Koonce v. Pacilio*, 307 Ill. App. 3d 449, 461, 718 N.E.2d 628, 638 (1999). In submitting IPI Civil (1995) No. 5.01 to the jury, the circuit court must first determine whether, in all likelihood under the facts and circumstances of the case, the party would have produced the evidence unless it was unfavorable. The adverse presumption that may be created is dependent upon the absence of a reasonable excuse for the party's nonproduction or a wilful withholding of the evidence concerned. *Coupon Redemption, Inc. v. Ramadan*, 164 Ill. App. 3d 749, 755, 518 N.E.2d 285, 290 (1987). However, IPI Civil (1995) No. 5.01 is not warranted if the unproduced evidence is merely cumulative of the facts and circumstances established. *Chuhak v. Chicago Transit Authority*, 152 Ill. App. 3d 480, 489, 504 N.E.2d 875, 881 (1987). Whether to submit IPI Civil (1995) No. 5.01 to the jury is in the sound discretion of the circuit court. *Roeseke v. Pryor*, 152 Ill. App. 3d 771, 780-81, 504 N.E.2d 927, 933 (1987). Accordingly, we will not reverse the circuit court's decision to submit IPI Civil (1995) No. 5.01 absent a clear abuse of discretion. *Koonce*, 307 Ill. App. 3d at 461, 718 N.E.2d at 638.

■ Defendant argues only that plaintiff did not present evidence satisfying the third element of the instruction. However, defendant's contentions, supposedly in support of this argument, concede the existence of the third element of IPI Civil (1995) No. 5.01 instead of refuting it. Defendant contends that the report of its porter, Roosevelt Jordan, presumably would have reflected that plaintiff fell over the bathroom vanity door, as plaintiff had alleged in his complaint. Defendant further contends in its brief that "a reasonably prudent person under the same or similar circumstances would not have of-

fered the report since defendant *would not have believed it to be favorable* to it in that the report would simply have restated the conclusion that plaintiff tripped over the open vanity door." (Emphasis added.) We find no substantive difference between defendant's latter contention and the finding necessary under the third element of the instruction. Defendant has simply phrased the element in the negative and effectively admitted its existence. This does not demonstrate an abuse of discretion.

Defendant also argues that Jordan's report, had it been produced, would have presumably duplicated another incident report completed by defendant's security personnel after plaintiff's fall. However, Jordan was engaged in his duties as an employee of defendant at the time of the incident and was the only employee present at the time of the incident. Jordan did not wholly adopt the incident report actually produced by defendant, and he testified that the report produced was not the report he had made in response to the incident. For these reasons alone, we can just as easily presume that Jordan's report, had it been produced, would have provided additional evidence adverse to defendant that was not included in the report completed by its security personnel, who were present after the incident. Therefore, the circuit court did not abuse its discretion in submitting plaintiff's tendered instruction to the jury.

## Jury Award

Lastly, defendant argues that it is entitled to a new trial because the jury's award of $1.25 million to plaintiff for future lost wages is contrary to the manifest weight of the evidence. Specifically, defendant argues that the jury's award of future lost wages was based upon the testimony of Dr. Leroy Grossman, an economist retained by plaintiff to calculate his wage loss resulting from his injuries. Defendant notes that Dr. Grossman based his calculations of plaintiff's future loss of wages on the assumption that plaintiff was unemployable, and it argues that the evidence presented at the trial showed that plaintiff was employable. We disagree.

The appellate court will not set aside a jury verdict unless the verdict is determined to be contrary to the manifest weight of the evidence. *Johnson v. Chicago Transit Authority*, 248 Ill. App. 3d 91, 94, 618 N.E.2d 433, 435 (1993). "A verdict is against the manifest weight of the evidence if the opposite conclusion is clearly evident or where the findings of the jury are unreasonable, arbitrary[,] and not based upon any of the evidence." *Carter v. Azaran*, 332 Ill. App. 3d 948, 959, 774 N.E.2d 400, 411 (2002). A jury's verdict should be upheld if there is sufficient credible evidence to support it. *Johnson*, 248 Ill.

App. 3d at 94, 618 N.E.2d at 436. This court will not disturb a jury verdict unless there is no evidence that fairly tends to support the verdict. *Lyon Metal Products, L.L.C. v. Protection Mutual Insurance Co.*, 321 Ill. App. 3d 330, 347, 747 N.E.2d 495, 509 (2001). A jury's verdict is entitled to respect and deference, and a reviewing court will not invade the function of the jury and substitute its judgment for the jury's. *Sullivan v. Edward Hospital*, 335 Ill. App. 3d 265, 275 (2002), citing *Aldridge v. Morris*, 337 Ill. App. 369, 374, 86 N.E.2d 143, 146 (1949).

▪▪▪ "The question of damages in a personal injury suit is peculiarly one for the trier of fact." *Kirk v. Walter E. Deuchler Associates, Inc.*, 79 Ill. App. 3d 416, 426, 398 N.E.2d 603, 610 (1979), citing *Premack v. Chicago Transit Authority*, 2 Ill. App. 3d 127, 276 N.E.2d 77 (1971). A court of review should not lightly substitute its opinion for the judgment rendered by the jury. *Carter*, 332 Ill. App. 3d at 962, 774 N.E.2d at 413. In order to recover for future lost earnings, the law simply requires that the plaintiff introduce evidence that will establish, to a fair degree of probability, a basis for the assessment of damages. *Goldman v. Walco Tool & Engineering Co.*, 243 Ill. App. 3d 981, 992, 614 N.E.2d 42, 50 (1993), citing *Tracy v. Village of Lombard*, 116 Ill. App. 3d 563, 575, 451 N.E.2d 992, 1001 (1983).

Defendant attempts to support its argument by citing to the following testimony: that plaintiff had been working after 1996 when he started a pizza business; that plaintiff expressed that he hoped to obtain employment; that Dr. Samuel Bernstein, plaintiff's vocational expert, did not conclude that plaintiff was unemployable; that with training and therapy plaintiff could perform clerical jobs; and that there was a tremendous labor shortage at the time of the trial. These isolated excerpts of testimony, mostly taken out of context, are not representative of the weight of the evidence. For instance, defendant refers to Dr. Grossman's opinion that there was a tremendous labor shortage at the time of the trial and that there were jobs out there. However, the existence of a labor shortage does not bear on plaintiff's *ability* to work. Further, defendant's reference to Dr. Grossman's comments omits his testimony that he had no idea of whether plaintiff was employable or not and that whether plaintiff was employable or not was outside his area of expertise. Defendant concedes, in other portions of its brief, that Dr. Wolfgram testified that he considered plaintiff to be totally unemployable.

In reviewing the testimony *in toto*, we conclude that there was sufficiently credible evidence to support the jury's verdict. It was both reasonable for the jury to find that plaintiff was unemployable as a result of his injuries and reasonable for the jury to rely upon Dr.

Grossman's calculations of plaintiff's future wage loss resulting from his injuries. Accordingly, the jury's award in favor of plaintiff is not contrary to the manifest weight of the evidence presented and shall stand.

## III. CONCLUSION

For the foregoing reasons, the jury's verdict and the judgment of the circuit court are affirmed.

Affirmed.

HOPKINS, P.J., and GOLDENHERSH, J., concur.