Reversed and remanded for a redetermination of plaintiff's child support obligation.

---

892 A.2d 741

RENA BRENMAN, MITCHELL D. BRENMAN, PLAINTIFFS–APPELLANTS, v. MICHAEL DEMELLO, STEPHANIE DEMELLO, AND ABC COMPANY, A FICTITIOUS AND UNKNOWN COMPANY, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted January 23, 2006—Decided March 8, 2006.

Before Judges CUFF, PARRILLO and GILROY.

*Leonard & Leonard*, attorneys for appellants (*Michael Wiseberg*, on the brief).

*Connell Foley*, attorneys for respondents (*Kathleen S. Murphy*, of counsel and on the brief).

The opinion of the court was delivered by

PARRILLO, J.A.D.

In this automobile negligence case, plaintiffs, Rena and Mitchell Brenman,[1] appeal from entry of judgment in favor of defendants, Michael Demello and Stephanie Demello, after a "no-cause" jury verdict, and from denial of their motion for a new trial. Plaintiffs' principal contention on appeal is that it was reversible error to admit photographs showing minimal damage to their vehicle with-

---

[1] Plaintiff, Mitchell Brenman, Rena's husband, sued *per quod.*

out an accompanying instruction precluding use of this evidence to prove, without expert bio-mechanical foundation, that such a low impact collision could not cause the serious personal injury claimed by Rena. For reasons that follow, we reverse.

On October 10, 2001, forty-year old Rena Brenman (plaintiff) was driving her car on Ryders Lane in East Brunswick when she was rear-ended by a vehicle operated by Stephanie Demello (defendant) in "stop and go" traffic. According to plaintiff, her vehicle was pushed four or five feet forward into the right hand curb where there was another bump. Plaintiff, who was seatbelted, "jerked forward and backwards," and hit "[her] head and her neck, [her] shoulders and [her] back" on the seat. By all accounts, her car sustained minimal damage—a dent on the driver's side portion of the rear bumper. There was some dispute, on the other hand, as to the damage sustained to defendant's vehicle. Plaintiff described the front of defendant's car as "smushed in all the way to the windshield," "like an accordion." According to defendant, there was damage to the headlight, grill and hood, and the car was towed away because it was leaking antifreeze from a punctured radiator and not because it was inoperable. In any event, defendant was given a summons for careless driving.

Plaintiff immediately complained of neck pain, although she did not visit the emergency room. Several days later, after being treated by her family physician for neck and shoulder pain, she consulted with an orthopedist, Dr. Lewis Zemsky, who prescribed pain medication and recommended physiotherapy and a cervical pillow. Two months later, in December 2001, plaintiff underwent an MRI, which confirmed a "cervical spondylosis with a ventral osteophytic ridge ... at C3–4 without spinal cord compression or foraminal encroachment." Based on these results, plaintiff was referred to Dr. Kasoff, for a neurological consultation. A myelogram performed on March 22, 2002, established an impingement at C3–4, revealing "a disc ridge complex at the C3–4 level with a cut off of the two nerve roots at that level, that would be the two

C4 nerve roots .... [it] was worse on the right than on the left...."

Dr. Kasoff recommended an anterior cervical discectomy and fusion, and a second opinion from Dr. Kalko, a neurosurgeon, concurred with Dr. Kasoff's pathology and recommendation. Consequently, on August 20, 2002, plaintiff underwent an anterior cervical fusion, involving the removal of the discs at C3–4, C4–5, and C5–6.[2] In his post-operative report, Dr. Kalko, plaintiff's operating surgeon, found that plaintiff had indeed sustained a "herniated disc at these three different levels." Plaintiff was left with a permanent three-inch keloid scar on her neck.

Plaintiff continued seeing Dr. Kalko post-operatively. As of June 17, 2003, Dr. Kalko diagnosed plaintiff with cervical radiculopathy and concluded her injuries were both permanent and caused by the car accident. Complaining of pain radiating to both her arms, plaintiff was also examined, as late as July 30, 2004, by Dr. Ratzker, her trial expert. Although Dr. Ratzker acknowledged that osteophytes, or abnormal bone protrusions, may be degenerative in nature, he nevertheless concluded, similar to Dr. Kalko, that "there was a causal relationship between the accident and [plaintiff's] problem" based on the diagnostic studies and the "fact that [plaintiff] had not complained previously of these problems, neck pain, radiation to the head, radiation down the arms and began to suffer with these complaints immediately after the accident...."

The origin of plaintiff's injuries was disputed by Dr. Eric Fremed, defendant's expert in neurology. He interpreted both the MRI and myelogram similar to Dr. Ratzker. However, Dr. Fremed opined that spondylosis was a degenerative condition and that the presence of osteophytes was also suggestive of the same.

_____

2 At trial, plaintiff's expert in neurosurgery, Dr. Paul Ratzker, testified that a fusion involves joining two or more vertebra by removing a diseased disc and inserting a "bone dowel" in the space created, thus forming one piece of bone where there would have been three, and restricting movement about the neck. The result is permanent, in that the vertebra are joined together.

Although he concluded that the "need for surgery had nothing to do with the accident," Dr. Fremed acknowledged "that a trauma can aggravate [the] preexisting condition."

Both Ratzker and Fremed agreed, however, that plaintiff had no cervical history prior to the accident. They also agreed that there was no correlation between the minimal impact nature of the collision and any injury plaintiff may have suffered therefrom. The following exchange occurred on redirect of Dr. Ratzker:

Q: ... in your experience as a neurosurgeon is there any relationship between how much damage is done to the rear of a car and any injuries that may be sustained by the occupants of that vehicle?

A: No, not necessarily. *The important point is how or what vector of force was delivered to the patient's spine—*

. . . .

A: In a typical rear-end collision like this typically the patient will be seated, the impact delivered to the patient is through the back of the seat, which means the body will start going forward first while the head lags, okay? Because the seat is pushing the thoracic area forward while nothing is behind the cervical. So the head will typically snap back and then kind of forward flex to catch up with the body, we call an extension flexion injury.... And that, again, totally depends on the momentum or the velocity of that seat against the patient's upper back. *It doesn't have anything to do with what happened to the bumper or what not.*

[Emphasis added.]

Dr. Fremed agreed with Dr. Ratzker, as reflected by the following exchange on his cross-examination:

Q: And isn't it true you never really look at the damage to somebody's vehicle, you look and see what happened to the individual that you're treating?

A: Correct.

Q: Okay. And you would agree there really is no, no neurological relationship between how much damage is done to a rear bumper, in fact, you have to listen to the patient and find out the chronology of complaints?

A: That is correct.

Q: *All right So if the jurors were going to look at some photographs in this case, something like D–12 that will tell you the picture of the bumper, correct, but it doesn't tell you what happened to the occupant?*

A: *That's correct.*

[Emphasis added.]

Defendant conceded liability. Consequently, the only issues at trial were the cause, nature and extent of plaintiff's alleged injuries. On this score, before trial, plaintiff moved *in limine* to exclude enlarged photographs showing minimal damage to her car immediately after the accident, and, alternatively, for a limiting instruction on the use of such photographs. Plaintiff argued that the correlation between impact and injury is a scientific matter requiring expert bio-mechanical proof, which was lacking in this case. The trial judge denied the motion *in limine*, reasoning that case law "permit[s] the use of the photographs without a limiting instruction and I will accept the photographs into evidence." The judge rejected the need for supporting expert testimony in this case because the photographs were *not* being used to disprove causation, but would be used exclusively to show the severity of the impact and the extent of the physical damage to plaintiff's vehicle. In this regard, the judge specifically concluded that:

[W]here the photographs have been offered *not to prove causation* but, instead, to address the disputed issue of the severity of impact the photographs were not scientific evidence so as to [re]quire expert testimony and no expert testimony is needed to describe the physical damage of the vehicle or to all the jury to infer that the force that would cause the damage.

[Emphasis added.]

Resultingly, at trial, photos of plaintiff's vehicle were admitted over plaintiff's objection, but no photograph of defendant's vehicle was proffered even though the extent of its damage was disputed. And notwithstanding the implicit understanding that the photos would not be used to prove causation, defense counsel in her opening and closing arguments inferred precisely just such a correlation. Despite the absence of any expert bio-mechanical proof to this effect, and indeed a consensus of medical testimony to the contrary, defense counsel nevertheless suggested that limited property damage shows that the force of impact was insufficient to cause plaintiff's injuries. Defense counsel argued on summation:

I opened as a fender bender. I'm going to close as a fender bender. That's what that was. Mrs. Brenman, however, Mr. Brenman now want Stephanie Demello to pay for some close to $400,000 in future lost wages, some $270,000 they're claiming

for future household items, for a surgery, a triple cervical fusion *all as a result of that. All as a result of that fender bender.*

[Emphasis added.]

Then, at the very close of her argument, defense counsel, again referring to the accident as a "fender bender," implied such slight property damage did not cause plaintiff's injuries:

My client Stephanie Demello is being charged with a lot of things, all this future income, all these household services, all this money, *all this injury from a minor fender bender. I opened with it, ladies and gentlemen, and I'll close with it. This is a fender bender. This is not a lottery.*

[Emphasis added.]

The jury's charge included instructions on proximate causation in the context of a claim of aggravation of a preexisting condition that was asymptomatic at the time of the accident. As noted, however, the judge did not give a limiting instruction on the use of the photos of plaintiff's vehicle, or a curative instruction to mitigate the effect of defense counsel's argument linking vehicle damage to bodily injury. During deliberations, the jury requested to be reinstructed on proximate cause. Shortly thereafter, the jury returned a "no-cause" verdict finding defendant was not the proximate cause of plaintiff's injuries.

Plaintiff moved for a new trial. Her principal contention was that the photos depicting minimal damage to her vehicle should not have been admitted into evidence without a proper limiting instruction and that absent any expert testimony establishing a correlation between vehicle damage and personal injury, defense counsel should have been prohibited from inviting the jury to speculate about the existence of such a connection. In opposing plaintiff's motion, defendant argued that photographs of vehicles post-accident are admissible as relevant evidence and it is essentially "common knowledge" that there is some relationship between the extent of vehicular damage and the likelihood of a particular injury. The judge denied the motion for a new trial.

Plaintiff repeats her principal contention on appeal. Under the circumstances of this case, we are satisfied that the admission of the photographs without any limitation on their use, and the use

actually made of them by the defense without any supporting expert proof correlating vehicular damage and the likelihood of occupant injury, were clearly capable of producing an unjust result.

As a threshold matter, we review a trial court's evidentiary rulings under an abuse of discretion standard, *Benevenga v. Digregorio*, 325 *N.J.Super.* 27, 32, 737 *A.2d* 696 (App.Div.1999), *certif. denied*, 163 *N.J.* 79, 747 *A.2d* 287 (2000), except where its exercise of discretion relies on an erroneous conclusion of law, our review is *de novo*. *Manalapan Realty, L.P. v. Tp. Comm.*, 140 *N.J.* 366, 378, 658 *A.2d* 1230 (1995). In other words, a trial court must exercise its discretion within the bounds of the law.

Photographic evidence is usually admissible as demonstrative proof, assuming it is relevant, *N.J.R.E.* 401; fairly and accurately depicts the subject matter at the time of the event in question, *Spedick v. Murphy*, 266 *N.J.Super.* 573, 590, 630 *A.2d* 355 (App.Div.), *certif. denied*, 134 *N.J.* 567, 636 *A.2d* 524 (1993); *Ellis v. Rosenberg*, 15 *N.J. Misc.* 37, 38–39, 188 *A.* 499 (1936); is properly authenticated or verified as a true representation, *Garafola v. Rosecliff Realty Co.*, 24 *N.J.Super.* 28, 42, 93 *A.2d* 608 (App.Div.1952); and is not otherwise unduly prejudicial, confusing, misleading or wasteful of time. *N.J.R.E.* 403. Of course, to qualify as relevant, "the evidence [must have a tendency] to establish the proposition that it is offered to prove," *State v. Wilson*, 135 *N.J.* 4, 13, 637 *A.2d* 1237 (1994); to make a " 'logical connection between the proffered evidence and a fact in issue,' " *Furst v. Einstein Moomjy, Inc.*, 182 *N.J.* 1, 15, 860 *A.2d* 435 (2004) (quoting *State v. Hutchins*, 241 *N.J.Super.* 353, 358, 575 *A.2d* 35 (App.Div.1990)); or to " 'render[] the desired inference more probable than it would be without the evidence.' " *State v. Davis*, 96 *N.J.* 611, 619, 477 *A.2d* 308 (1984) (quoting *State v. Deatore*, 70 *N.J.* 100, 116, 358 *A.2d* 163 (1976)).

Photographic evidence is not inherently relevant but only as to a particular matter properly provable in a case, when it makes the existence of a fact in issue more or less probable. That

is to say, relevant evidence is not automatically or always admissible. Where concerns are raised under *N.J.R.E.* 403, a weighing or balancing of the degree of probity against the level of unfair prejudice is required, and the decision to admit or exclude a photograph normally rests with the trial judge. The proponent of such evidence bears the burden of demonstrating its relevancy.

In the context of automobile negligence cases, photographic evidence depicting accident scenes and damage to vehicles are normally considered to have some relevance. Along with particular reasons in each case, as a general proposition, such photographs may help explain the description of the occurrence provided by parties and witnesses and may assist the jury to visualize the nature of the accident. In fact, in some cases, this type of demonstrative evidence has the unique capacity to clarify and communicate facts more accurately than the words it illustrates. Thus, where there is some dispute as to the circumstances of the underlying accident, photographs of vehicular damage may have significance to the issues of liability and negligence. For instance, a description of the physical damage to the vehicle may allow the jury to properly infer the force of the impact that would cause the property damage depicted in the photographs.

Even where liability has been conceded, courts have held that photographs and testimony describing vehicular damage may be relevant with respect to the nature, extent or seriousness of an occupant's personal injuries suffered in the automobile accident. In *Gambrell v. Zengel,* 110 *N.J.Super.* 377, 265 *A.*2d 823 (App.Div. 1970), the position of the parties was exactly the inverse of that asserted here. In *Gambrell,* the defendant, who had admitted liability, argued for exclusion of photos depicting substantial property damage, "claim[ing] that it was unfair thus to permit the jury to infer that plaintiff sustained serious personal injury, since a heavy impact between two vehicles is an unreliable barometer of the severity of physical injury sustained." *Id.* at 379, 265 *A.*2d 823. Although we recognized "that the force of the impact, when two automobiles collide, does not necessarily justify as an infer-

ence that the occupants of the vehicles sustained serious physical injuries[,]" *id.* at 380, 265 *A.*2d 823, we nevertheless held that the photos were admissible on the only remaining issue of damages, reasoning:

> At the same time it is a generally accepted rule that evidence of the speed at which the colliding cars were traveling, the severity of the physical impact and the manner of the happening of the accident is admissible where there is an issue as to the seriousness of plaintiff's injuries.
>
> [*Ibid.*]

We later reached the same result in *Spedick, supra,* this time rejecting objections by a plaintiff to the admission into evidence of two photographs showing no damage to the front of the defendant's automobile. *Spedick, supra,* 266 *N.J.Super.* at 590–91, 630 *A.*2d 355. As in *Gambrell,* there was a decided conflict in the medical proofs as to the nature and extent of the injuries the plaintiff sustained in the automobile accident. *Id.* at 579–82, 630 *A.*2d 355. We not only upheld the admissibility of the photographs, *id.* at 590, 630 *A.*2d 355, but also found that it was "entirely proper for defendant to comment on the photographs, and to argue the inferences to be drawn therefrom, in an effort to refute plaintiff's expert's medical testimony as to the *seriousness* and *permanency* of the injuries he had sustained." *Id.* at 591, 630 *A.*2d 355 (emphasis added).

A similar conclusion was reached in *Murray v. Mossman,* 52 *Wash.*2d 885, 329 *P.*2d 1089, 1090–91 (1958), where the issue was also limited to the amount of damages the plaintiff sustained in an automobile accident. The Court upheld the admission of five photographs and testimony showing the amount of vehicular damage for "the limited purpose of showing the force [and direction] of the impact that resulted in [plaintiff's injury,]" which all agreed was a whiplash injury. *Id.* at 1091. *See also Mason v. Lynch,* 388 *Md.* 37, 878 *A.*2d 588, 601 (2005) (photographs were relevant to issue of extent of plaintiff motorist's injuries, and fact "that there may be some automobile accidents, in which very minor impacts lead to serious personal injuries, and vice versa, does not mean that evidence concerning the impact is irrelevant to the extent of

the injuries."); *Berndston v. Annino,* 177 *Conn.* 41, 411 *A.*2d 36, 39 (1979) ("The prevailing view appears to support the proposition that, even though liability is fully admitted, evidence of speed, physical impact, and the like is admissible as relevant to the probable extent of personal injuries. This accords with our view." (citation omitted)); *Eubank v. Spencer,* 203 *Va.* 923, 128 *S.E.*2d 299, 301–02 (1962) ("Where liability has been admitted and the only issue to be determined is the quantum of damages, the force of the impact and the surrounding circumstances may be relevant to slow the extent of plaintiff's injuries."); *Hall v. Burkert,* 117 *Ohio App.* 527, 193 *N.E.*2d 167, 169 (1963) ("The speed with which a car is being driven into collision may have a distinct relationship with the seriousness of injury...."); *Johnson v. McRee,* 66 *Cal.App.*2d 524, 152 *P.*2d 526, 528 (1944) ("[T]he force with which a blow was struck, where it is susceptible of proof, is a fact to be considered with other evidence in determining how severe the injuries were."); *Martin v. Miqueu,* 37 *Cal.App.*2d 133, 98 *P.*2d 816, 818 (1940) ("Defendants' theory was that such back injury was slight. It was therefore proper for plaintiff to introduce ... evidence concerning the manner of the happening of the accident in order to show the force with which defendant ... struck the automobile of plaintiff."). The rationale underlying admissibility in these cases where the disputed issue concerns the extent, rather than the existence, of injury resulting from an actionable accident, appears uniformly to be the common sense notion that, "as a matter of probability, a correlation [exists] between the nature of the vehicular impact and the severity of the personal injuries." *See Mason, supra,* 878 *A.*2d at 601.

Regardless of whether such common sense belief suffices to support an inference that a plaintiff's subjective complaints are not credible, we discern it to have no legitimate application to issues of causation, which are ordinarily matters susceptible of expert proof. *Pelose v. Green,* 222 *N.J.Super.* 545, 549–51, 537 *A.*2d 745 (App. Div.), *certif. denied,* 111 *N.J.* 610, 546 *A.*2d 530 (1988); *Budden v. Goldstein,* 43 *N.J.Super.* 340, 346–47, 128 *A.*2d 730 (App.Div.1956). Far different considerations pertain where the real issue in con-

troversy is the origin or cause of plaintiff's injuries rather than their nature, extent or seriousness. In such situations, photographs depicting slight vehicular damage, although conceivably serving other valid purposes, simply do not support, without corroborative expert proof, the inference that the accident could not have caused the serious injury of which a plaintiff complains.

Indeed, the photograph admitted in *Gambrell* was not being offered to definitively determine whether the injury could or could not have resulted from the impact, in which event expert proof would have been required. Biunno, *Current N.J. Rules of Evidence*, comment 1 on *N.J.R.E.* 702 (2005); *Gambrell, supra,* 110 *N.J.Super.* at 379, 265 *A.2d* 823. Rather, the photo was simply proffered as relevant to the disputed issue of the severity of the impact, in which case no expert proof is needed to describe the physical damage to the vehicle, or to allow the jury to infer the force that would cause that damage. *Id.* at 379, 265 *A.2d* 823. And even in that situation, we recognized the very real risk that such photographs may have an "inflammatory effect on the jury." *Id.* at 381, 265 *A.2d* 823.

In *Suanez v. Egeland,* 353 *N.J.Super.* 191, 194, 801 *A.2d* 1186 (App.Div.2002), the defense, implicitly acknowledging the need for same, actually proffered expert proof by a bio-mechanical engineer that a low-impact automobile accident cannot cause a herniated disc. We rejected such proof, however, for want of the requisite "reliable scientific foundation." *Id.* at 202, 801 *A.2d* 1186. In doing so, we had occasion to observe that the "decisions brought to our attention have concluded that there is no reliable scientific foundation in bio-mechanical studies for an expert opinion that a low-impact automobile accident cannot cause a herniated lumbar disc or other serious injury." *Id.* at 201–02, 801 *A.2d* 1186. If the pertinent field of expertise has yet to establish a scientific basis for the connection, we question how a jury may be expected to draw an inference of causation in the absence of any proof, expert or otherwise.

And yet that is precisely what the defense in *Davis v. Maute,* 770 *A.*2d 36 (Del.2001), asked the court to allow. In *Davis,* defense counsel argued in both opening and summation, based on photographs of slightly damaged cars, that the accident was a "fender bender" in order to persuade the jury that the forces causing damage to the vehicles in the accident could not have impacted the plaintiff sufficiently to have caused the injuries about which she complained. *Id.* at 38. Although all agreed that Davis suffered from permanent soft tissue injuries, causation was hotly contested at trial. *Id.* at 38–39. The plaintiff's medical expert said they were traumatic in origin, resulting from the collision, which caused the plaintiff to twist suddenly to her right, and the defendant's medical proofs suggested they were degenerative, the result of a pre-existing arthritic condition. *Id.* at 38–39. Defense counsel's reference to "fender bender" was part of his argument that Davis' complaints were the result of his pre-existing condition rather than a product of the accident. *Id.* at 40–41.

Before the "fender bender" comment was made, the trial judge had specifically ruled that counsel could not present that very contention, based on the photographs alone. *Id.* at 42. There was no expert testimony correlating the extent of vehicular damage to the extent of an occupant's personal injuries. *Id.* at 40. Obviously, then, the phrase "fender bender" circumvented the trial judge's ruling. In granting the plaintiff a new trial on damages, the Delaware Supreme Court held that the phrase was impermissible because it was unsupported by expert testimony, and left the jury in a position to "make unguided empirical assumptions on issues that are outside the common knowledge of laymen." *Id.* at 41 n. 9. The Court "also conclude[d] that it was error to admit the photographs of the plaintiff's car without a specific instruction limiting the jury's use of the photographs." *Id.* at 38. So great was the potential for prejudice that the "fail[ure] to provide a curative instruction to mitigate the effects of the defendant's improper argument ... [required] a new trial...." *Ibid.*

■ From *Davis* we may extrapolate the broad rule "that absent facts that are supported by competent expert testimony, counsel may not directly argue to the [jury] that there is a correlation between the extent of the damage to the vehicles involved in an accident and the cause ... of personal injuries alleged from that accident," and may not rely on photographs of the vehicles involved to indirectly accomplish the same result. *Eskin v. Carden*, 842 A.2d 1222, 1226 (Del.2004). *Eskin* followed the holding in *Davis, id.* at 1226, as did *DiCosola v. Bowman*, 342 Ill.App.3d 530, 276 Ill.Dec. 625, 794 N.E.2d 875, *appeal denied*, 206 Ill.2d 620, 282 Ill.Dec. 477, 806 N.E.2d 1065 (2003). In the latter case, the trial court excluded both photographs showing slight damage to plaintiff's vehicle and evidence of the dollar amount of that property damage, and further prohibited the defendant from arguing, without expert testimony, that a correlation existed between the amount of damage to the vehicle and the extent and origin of plaintiff's injuries. That decision was upheld on appeal, the court analogizing the situation to cases requiring expert medical proof of causation when it is claimed that a preexisting condition has been aggravated or exacerbated by injuries sustained in the subsequent accident at issue:

> This court has explained that the rationale for requiring a defendant to introduce this expert testimony is "to avoid what amount[s] to the jury forming medical opinions."
>
> The same principles apply to the relationship between damage to a plaintiff['s] vehicle and the nature and extent of a plaintiff['s] personal injuries.
>
> [*DiCosola, supra*, 276 Ill.Dec. 625, 794 N.E.2d at 880–81 (quoting *Hawkes v. Casino Queen, Inc.*, 336 Ill.App.3d 994, 271 Ill.Dec. 575, 785 N.E.2d 507, 518 (2003)) (first alteration in original).]

We find the rationale of *Davis* and its progeny persuasive. Photographs alone cannot provide definitive evidence that the physics of a particular accident—the general forces at work in a collision determined by physical forces analysis—did or did not cause a particular injury to a particular individual. This is especially so here where the medical experts on both sides agreed there is no such connection. As such, a party's use of photographs depicting minimal vehicular damage to suggest just such a caus-

ative correlation invites and encourages jury supposition and conjecture, without a basis in the evidence, that the plaintiff's injuries could not have been caused by a relatively minor accident. Obviously, such commentary contains the clear capacity to produce an unjust result.

Applying these principles to the facts at hand, we are convinced that the cumulative effect of admitting the photographs without a limiting instruction and allowing counsel to prominently argue an improper inference resulted in an unfair verdict.

Despite defendant's contention to the contrary, the central, critical issue in dispute was the cause of plaintiff's injuries. Significantly, for present purposes, there was no disagreement that plaintiff's vehicle sustained only very minor property damage and, as a result, the photographs were not offered solely to establish the degree of damage to plaintiff's car. Nor was there any real conflict over the severity of plaintiff's condition following the accident. Although there was some question whether plaintiff actually sustained a herniated disc, the objective medical evidence revealed at the very least "a disc ridge complex at C3–4 level with a cut-off of the two nerve roots at that level." Undisputedly, plaintiff underwent an anterior cervical fusion involving the removal of the discs at C3–4, C4–5, and C5–6, and even defendant's medical expert found "a case [for operating] at C3–4 . . ." Thus, this is not a case like either *Gambrell* or *Spedick*, where photographic evidence was deemed relevant to the disputed issues of the severity of the impact and the probable extent of the resulting personal injury, *Gambrell, supra,* 110 *N.J.Super.* at 380, 265 *A.2d* 823; *Spedick, supra,* 266 *N.J.Super.* at 590–91, 630 *A.2d* 355, or where evidence of soft tissue injury was subjective and unsupported by objective medical findings, or where there has been a delay in symptoms and treatment. Rather, the critical difference in expert medical opinion in this case was the *cause* of plaintiff's condition, which plaintiff's medical expert opined was traumatic in origin, due to the vehicular collision, and defendant's medical expert concluded was pre-existing and degenerative in nature.

Given the narrow field of dispute, the photographs served no apparent purpose other than to suggest the accident was low-impact and minor and, therefore, not the cause of plaintiff's condition. For reasons already advanced, we find this inference impermissible absent an expert foundation. And lest there be any doubt as to defendant's real purpose, counsel referred to the accident as a "fender bender" on three separate occasions in her opening and closing remarks. Clearly, this argument played a prominent role in the defense, especially in light of the polarity of medical views on causation, and was identical to that found objectionable in *Davis*. By the same token, nowhere in her argument did defense counsel explain to the jury how, based merely on the extent of property damage, a fact finder could assess the origination of plaintiff's injury or whether any pre-existing condition she may have had was exacerbated by the impact. In any event, defense counsel's argument clearly transgressed what was to be, at least according to the trial court's tacit understanding, the limited use to which the photographs would be put. Even more significant, however, counsel's commentary contradicted her own medical expert who opined no such connection or correlation between impact and injury exists. Under the circumstances then, we conclude that the introduction of the photographs without appropriate limiting instruction, when considered together with counsel's uncured comments thereon, allowed the jury to speculate, unguided by any expert basis, as to the cause of plaintiff's injuries, and thus created a clear capacity for an unjust result.

To be clear, our holding should not be construed broadly to require expert testimony in every case in order for jurors to be permitted to view photographs of vehicles involved in an accident. As noted, photographic evidence is neither automatically admissible nor excludable, but rather subject to the sound exercise of the trial court's discretion. Whether an expert foundation is required depends, of course, on the particular issue in the case to which the photographic evidence relates. Here, that issue was causation and because no expert proof of correlation was produced, we hold that

the introduction of the photographs without restriction on their use and the use actually made of them by the defense constitute reversible error.

We have considered the remaining issues raised by plaintiff and are satisfied none of them is of sufficient merit to warrant discussion in a written opinion.  R. 2:11–3(e)(1)(E).

Reversed and remanded for a new trial.