# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-8018

LUKUS KEELING, on behalf of a class,

*Plaintiff-Respondent*,

*v.*

ESURANCE INSURANCE COMPANY,

*Defendant-Petitioner*.

Petition for Permission to Appeal from
the United States District Court
for the Southern District of Illinois.
No. 10-0835-DRH—**David R. Herndon**, *Chief Judge*.

SUBMITTED SEPTEMBER 2, 2011—DECIDED SEPTEMBER 26, 2011

Before EASTERBROOK, *Chief Judge*, and CUDAHY and

KANNE, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. A class action filed in a state court of Illinois on behalf of Esurance's policy-holders contends that the company committed fraud by charging for uninsured or underinsured motorist coverage that is worthless in light of the policy's restrictions. Esurance removed the suit to federal court under 28 U.S.C. §1453, part of the Class Action Fairness Act.

The proposed class has more than 100 members, and minimal diversity of citizenship has been established, but Lukus Keeling, the representative plaintiff, argued that the amount in controversy is less than $5 million, the statutory threshold. The district court agreed and remanded the action. 2011 U.S. Dist. LEXIS 80634 (S.D. Ill. July 25, 2011). Esurance has asked us to allow an interlocutory appeal under §1453(c)(1).

Esurance has issued more than 50,000 automobile insurance policies containing the contested clause. During the period of limitations before the suit began (five years), it collected a net premium of $613,894 on these coverages and paid no claims. The district court treated this as the principal amount in controversy (the class wants the money repaid). The court next stated that prospective relief would be costless to Esurance, because that relief would require changing only a few words on a printed form. Finally, the court declared that it would be "legally impossible" for the class to receive $4.4 million in punitive damages, the amount required to put the stakes over $5 million. This is the correct legal standard, see *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *Back Doctors Ltd. v. Metropolitan Property & Casualty Insurance Co.*, 637 F.3d 827 (7th Cir. 2011); *Rising-Moore v. Red Roof Inns, Inc.*, 435 F.3d 813 (7th Cir. 2006); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446 (7th Cir. 2005), but the district court did not apply that standard correctly.

Start with the value of the injunctive relief that the class demands. The district court wrote that the cost to

Esurance would be trivial: just reprint the forms. But this suit is about money, not ink. If the class is right and Esurance must either stop charging a premium or change the terms so that policyholders receive indemnity more frequently, it will suffer a financial loss. Suppose it were to comply with an injunction by eliminating this coverage and its premium. Its current profit on this coverage in Illinois is about $125,000 a year. The present value of foregoing this stream of profits is about $1.5 million. (That is the present value of $125,000 a year for 20 years, discounted at 5% per year.) The alternative means of complying with an injunction would be to change the policy's terms so that it paid more claims; that form of compliance would have an uncertain cost—presumably something less than $1.5 million (Esurance would not knowingly offer a coverage on which it loses money), but still far from trivial. The cost of prospective relief cannot be ignored in the calculation of the amount in controversy.

The expense of restitution plus the cost of prospective relief would be about $2 million. That leaves Esurance $3 million short of the jurisdictional minimum. Would it be "legally impossible" for the class to receive $3 million in punitive damages?

Punitive damages are available under both the common law of fraud and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 to 505/12, the two principal bodies of law that the complaint invokes. When calculating punitive damages, Illinois likely would ignore the cost to the defendant of prospec-

tive relief, because that sum is not part of any class member's injury. Thus the question is whether it is "legally impossible" in Illinois for policyholders to obtain $3 million in punitive damages on account of a fraud that cost them a little more than $600,000. (We do not mean that the terms of Esurance's policy *are* fraudulent; that remains to be determined. But to determine the amount in controversy between the parties we must accept the class's characterization.)

A punitive award of $3 million would amount to a multiplier of five. Courts in Illinois have affirmed awards for fraud or violations of the Consumer Fraud and Deceptive Business Practices Act that reflect higher multipliers. See, e.g., *Gehrett v. Chrysler Corp.*, 379 Ill. App. 3d 162 (2008) (multiplier of seven); *Bates v. William Chevrolet/GEO, Inc.*, 337 Ill. App. 3d 151 (2003) (same). Although the Supreme Court once suggested that a multiplier of four is close to the constitutional limit, *Pacific Mutual Life Insurance Co. v. Haslip*, 499 U.S. 1, 23–24 (1991), more recently it suggested that a larger (but still single-digit) ratio could be allowable. *State Farm Mutual Automobile Insurance Co. v. Campbell*, 538 U.S. 408, 425 (2003).

Plaintiffs' claim arises from the policy's written terms. Any tort therefore is not concealable. This implies a low multiplier (if any is appropriate). See A. Mitchell Polinsky & Steven Shavell, *Punitive Damages: An Economic Analysis*, 111 Harv. L. Rev. 869 (1988). On the other hand, each policyholder's loss is small, which could justify a substantial multiplier—at least if this were individual rather than class litigation. See *Mathias v. Accor Economy*

*Lodging, Inc.*, 347 F.3d 672 (7th Cir. 2003) (describing the tradeoff between the punitive-damages multiplier and class litigation when per-person stakes are small). Considerations such as these are properly part of the damages determination after the merits have been resolved. They should not be smuggled into the jurisdictional inquiry, which is supposed to be simple and mechanical. See *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, No. 09-3975 (7th Cir. July 8, 2011) (en banc). We therefore do not think it "legally impossible" for the class to recover more than $3 million in punitive damages. Improbable, perhaps, but not impossible.

We grant the petition for leave to appeal and summarily reverse the district court's decision. The case is remanded for decision on the merits.